**Winda M. HUNTER, Plaintiff,**

v.

**OHIO VETERANS HOME, Defendant.**

No. 3:02CV7267.

United States District Court,
N.D. Ohio,
Western Division.

June 26, 2003.

Harland M. Britz, Britz & Zemmelman, Toledo, OH, for Winda M. Hunter, Plaintiff.

Joseph N. Rosenthal, Office of the Attorney General, State of Ohio, Employment Law Section, Columbus, OH, Kenneth F. Affeldt, Office of the Attorney General, State of Ohio, Laurence R. Snyder, Office of the Attorney General, State of Ohio, Cleveland, OH, Margaret Telb DiSalle, Office of the Attorney General, State of Ohio, Employment Law Section, Columbus, OH, for Ohio Veterans Home, Defendant.

## ORDER

CARR, District Judge.

Plaintiff Winda M. Hunter brings this suit against defendant Ohio Veterans Home claiming breach of a race discrimination settlement agreement.[1] Pending is defendant's motion for judgment on the

---

1. Plaintiff also brings a claim for retaliation, which has been held in abeyance pending adjudication of the jurisdictional question.

pleadings, or alternatively, motion to dismiss. For the following reasons, defendant's motion shall be granted.

## BACKGROUND

On or about June 28, 2000, plaintiff filed a charge of racial discrimination with the Ohio Civil Rights Commission ("OCRC") in regards to treatment by her employer, Ohio Veterans Home. On September 13, 2000, the parties entered into a negotiated settlement agreement before the OCRC and the Equal Employment Opportunity Commission ("EEOC"), to which the OCRC was a signatory.

Plaintiff claims that defendant continues to discriminate against her in breach of the settlement agreement. In response to defendant's alleged breach of the agreement, plaintiff filed a charge of discrimination with the EEOC. On March 8, 2002, she received a right to sue letter.

Defendant moves to dismiss pursuant to Fed.R.Civ.P. 12(b)(1). In the alternative, defendant moves for judgment on the pleadings pursuant to Fed.R.Civ.P. 12(c) arguing lack of subject matter jurisdiction.

## STANDARD OF REVIEW

Under Rule 12(b)(1), a court may dismiss a complaint for lack of jurisdiction over the subject matter.

Rule 12(c) provides, "After the pleadings are closed but within such time as not to delay the trial, any party may move for judgment on the pleadings." Fed.R.Civ.P. 12(c). A motion for judgment on the pleadings is determined under the same standard of review as a motion to dismiss under Rule 12(b)(6). *Morgan v. Church's Fried Chicken,* 829 F.2d 10, 11 (6th Cir.1987). The only difference between Rule 12(c) and Rule 12(b)(6) is the timing of the motion to dismiss. A motion to dismiss under Rule 12(b)(6) requires the moving party to request judgment in a pre-answer motion or in an answer. A

motion for judgment on the pleadings under Rule 12(c) may be submitted after the defendants filed an answer.

Under Rule 12(b)(6), no complaint shall be dismissed unless the plaintiff has failed to allege facts in support of plaintiff's claim that, construed in plaintiff's favor, would entitle the plaintiff to relief. *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). When deciding a motion brought pursuant to Fed.R.Civ.P. 12(b)(6), the inquiry is essentially limited to the content of the complaint, although matters of public record, orders, items appearing in the record, and attached exhibits also may be taken into account. *See Yanacos v. Lake County,* 953 F.Supp. 187, 191 (N.D.Ohio 1996). The court must accept all the allegations stated in the complaint as true, *Hishon v. King & Spalding,* 467 U.S. 69, 73, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984), while viewing the complaint in the light most favorable to the plaintiff. *Scheuer v. Rhodes,* 416 U.S. 232, 246, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974). A court, however, is "not bound to accept as true a legal conclusion couched as a factual allegation." *Papasan v. Allain,* 478 U.S. 265, 286, 106 S.Ct. 2932, 92 L.Ed.2d 209 (1986).

## DISCUSSION

Federal courts are of limited jurisdiction. If parties are not diverse, federal jurisdiction exists only when the issue in controversy is a federal question that "arises under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. In the present case, the parties are not diverse and plaintiff's breach of contract claim is not a federal question, thus this court will not have jurisdiction.

Plaintiff claims that defendant breached a race discrimination settlement agreement, and, therefore, states that her complaint is "brought under" Title VII. 42 U.S.C. § 2000e–5(f)(3) ("Each United

States district court ... shall have jurisdiction of actions brought under this subchapter."). In response, defendant argues that any claim for breach of the settlement agreement is a state law breach of contract allegation, and, therefore, must be brought before the Ohio Court of Claims.[2]

 Plaintiff's current complaint is a breach of contract action that is "traditionally reserved for state courts to resolve." *Morris v. City of Hobart,* 39 F.3d 1105, 1112 (10th Cir.1994). Although plaintiff's claim is based on racial discrimination, a Title VII issue, the "mere presence of a federal issue in a state cause of action does not automatically confer federal-question jurisdiction." *Id.* at 1111 (quoting *Merrell Dow Pharmaceuticals, Inc. v. Thompson,* 478 U.S. 804, 813, 106 S.Ct. 3229, 92 L.Ed.2d 650 (1986)). Federal jurisdiction in this breach of contract claim will only exist if its resolution revolves around "a substantial question of federal law." *Id.*

 In determining whether a state cause of action involves a "substantial question of federal law," courts must use discretion. Decisions about federal juris-

diction "require sensitive judgments about congressional intent, judicial power, and the federal system." *Id.* The legislative history and text of Title VII indicate that Congress intended it to be enforced primarily through conciliation and voluntary compliance. *Eatmon v. Bristol Steel & Iron Works, Inc.* 769 F.2d 1503, 1509 (11th Cir.1985).[3] However, there is no indication that Congress intended to provide a federal forum for enforcement of all conciliation agreements involving Title VII issues, especially those mediated by state administrative agencies.

 Furthermore, there is no indication that a state's interest in enforcing contractual terms will interfere with the federal interest in encouraging settlements between employers and employees. Charles R. Calleros, *Reconciling the Goals of Federalism With the Policy of Title VII: Subject–Matter Jurisdiction in Judicial Enforcement of EEOC Conciliation Agreements,* 13 Hofstra L.Rev. 257, 284 (1985). State courts can effectively decide contractual issues without hindering the goals of Title VII.[4]

---

2. Defendant also argues that once a discrimination plaintiff enters into a settlement agreement, he or she forecloses the right to sue for the underlying Title VII claim. This may be true, but it does not explain why this court does not have jurisdiction over a claim for breach of a racial discrimination settlement agreement. Plaintiff's complaint is not an effort to revive her underlying Title VII claims, but rather an attempt to enforce the terms of a settlement agreement that she believes is based on further discrimination.

3. *See e.g.,* 42 U.S.C. § 2000e–5(b): ("[I]f the Commission determines after such investigation that there is a reasonable cause to believe that the charge is true, the Commission shall endeavor to eliminate any such alleged unlawful employment practice by informal methods of conference, conciliation, and persuasion.").

4. A number of other courts have held that federal common law will govern the interpre-

tation of conciliation agreements revolving around a Title VII issue. *See e.g. Snider v. Circle K Corp.,* 923 F.2d 1404, 1408 (10th Cir.1991) (quoting *Fulgence v. J. Ray McDermott & Co.,* 662 F.2d 1207, 1209 (5th Cir. 1981)) ("Federal common law governs the interpretation of such agreements because the 'rights of litigants and the operative legal policies derive form a federal source.'"); *Eatmon,* 769 F.2d at 1509 ("[I]t would be antithetical to Congress' strong commitment to conciliation if there were no federal forum for enforcement of conciliation agreements."); *Melendez v. Horizon Cellular Tel. Co.,* 841 F.Supp. 687, 694 (E.D.Pa.1994) ("[T]here is a powerful federal interest in enforcing Title VII settlement agreements...federal courts have jurisdiction over the interpretation and enforcement of such agreements....This is true even when state law governs both the right and remedy of the contract action."). However, federal common law should be used in rare circumstances. In this instance, be-

Plaintiff points to other federal courts that have evaluated similar contracts. *See, e.g., Parsons v. Yellow Freight System, Inc.,* 741 F.2d 871 (6th Cir.1984). However, in *Parsons,* the EEOC was involved in the settlement agreement. The involvement of the EEOC is a differentiating characteristic which makes this case distinguishable. *See, e.g., EEOC v. Liberty Trucking Co.,* 695 F.2d 1038.("Congress intended to provide the EEOC with a federal forum to enforce conciliation agreements.").

Finally, as stated above, plaintiff's original discrimination complaint was negotiated by the OCRC. Under the Ohio Administrative Code, if the OCRC attempts to enforce a conciliation agreement it would be enforced through the state courts of Ohio.[5] I see no reason why the same procedure would not apply if plaintiff brings a claim to enforce the same type of agreement.

The present claim is fundamentally based on a breach of contract, a state cause of action. State jurisdiction will allow this claim to be handled effectively in way that does not interfere with the congressional goal of Title VII conciliation. Because this is a state cause of action for the breach of a contract negotiated by a state agency, it should be handled by the state courts of Ohio.

## CONCLUSION

It is, therefore,

## ORDERED THAT

cause a state administrative agency negotiated the settlement agreement, it is appropriate that a state court hears the case.

5. *See e.g.,* OHIO ADMIN. CODE § 4112–3–10(3) (2001):( "The commission, the complainant, and the respondent may at any time enter into a written conciliation agreement which shall

Defendant's motion for judgment on the pleadings, be, and hereby is, granted, without prejudice.

**So ordered.**

constitute a cease and desist order of the commission.... Consent and desist orders shall have the same force and effect as a final order of the commission entered after hearing and may be filed by the commission for enforcement purposes in the appropriate common pleas court pursuant to section 4112.06 of the Revised Code.").